# CAROLINE C. GOULD

*v.*

# THE ELGIN CITY BANKING COMPANY *et al.*

*Filed at Ottawa January 22, 1891.*

1. REFERENCE TO MASTER—*diligence required of parties—in offering testimony.* Where, on a reference to a master in chancery to take and report the evidence in a cause, the complainant closes his evidence and a day is set for taking the defendant's evidence, and he fails to appear and another time is set, which is extended, and he still failing to appear, the master closes the evidence and reports, and the defendant fails to show any diligence to have his testimony taken, there will be no error in the court refusing to re-refer the cause on defendant's motion.

2. CONTINUANCE—*absence of counsel.* A cause in chancery being called for hearing, the defendant asked for a continuance on account of the absence of one of her two solicitors, but it was not shown that such absence of the solicitor was unavoidable, or that the other was not capable of properly presenting the defense : *Held,* no error to refuse the continuance.

3. Had it been made to appear to the court that a trial could not be had, in the absence of one of the solicitors, without injury to the defendant, and that the absence of counsel was unavoidable, the court, in the exercise of a sound discretion, might have ordered a postponement of the hearing, or a continuance, on the defendant's application.

4. SPECIFIC PERFORMANCE—*the contract to be fully established.* On bill for the specific performance of a contract for the sale of land, brought by the vendee against the vendor, the proof must be clear and satisfactory that the contract was made as charged, and that it is fair, reasonable and just, or equity will refuse relief.

5. STATUTE OF FRAUDS—*parol promise to convey land—performance to take a case out of the statute.* Where the wife of a debtor who has made an assignment of all his property for the benefit of his creditors, makes a verbal agreement with one of the creditors to unite with the assignee in deeds for the property sold, and to release her dower in the same, in consideration of such creditor releasing his mortgage upon the homestead of the wife, who acquires the title thereto subject to the mortgage, which agreement she fully performs, and she being in possession of the premises, such performance on her part while in possession under the contract will entitle her to a decree for the release of the mortgage. Her performance and possession will take the case out of the Statute of Frauds.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Kane county; the Hon. J. G. WILSON, Judge, presiding.

Mr. J. W. RANSTEAD, for the appellant:

Appellant was entitled to a continuance. *Jarvis* v. *Shack-lock*, 60 Ill. 378; *Graff* v. *Brown*, 85 id. 93.

The court erred in not re-referring the cause to the master to take and report defendant's evidence, and in dismissing appellant's cross-bill.

Messrs. SHERWOOD & JONES, for the appellees:

Referring the case back to the master was, at the most, a matter of discretion.

A defendant can not defeat a hearing by filing a cross-bill. *Wiley* v. *Platter*, 17 Ill. 538; *Myers* v. *Manny*, 63 id. 212.

The court did not err in refusing the motion for a continuance. *Pennsylvania Co.* v. *Rudel*, 100 Ill. 603; *Aid Association* v. *Prim*, 19 Ill. App. 224; *Graff* v. *Brown*, 85 Ill. 93.

The alleged agreement to release the trust deed was void, under the Statute of Frauds. *Palmer* v. *Snell*, 111 Ill. 161.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill brought by appellees, to foreclose a deed of trust given by Charles W. Gould to J. C. Bosworth, trustee, to secure certain notes executed by him. The property mortgaged was described in the deed of trust, as follows: "All real estate and appurtenances situate in Kane county, Illinois, including property upon Spring street, and several other pieces of real estate in the city of Elgin, Kane county, Illinois, the butter and cheese factory property in township of St. Charles, Illinois, and all other real estate in said Kane county." At the time the deed of trust was executed, the Spring street property was occupied by Charles W. Gould as a homestead, but he was not married to Caroline Gould, the appellant, until

some time after the execution of the trust deed. At the time of the execution of the trust deed, Gould, in addition to the St. Charles factory, also owned and operated twelve or thirteen other cheese factories in the vicinity, and he also owned a large farm in Cook county, and lots in the city of Elgin; but all of the property was under mortgage to the Elgin City Bank or the First National Bank of Elgin. Gould not having met with success in his business, and being unable to pay his debts, in March, 1885, made a general assignment of all his property to W. J. Hunter, for the benefit of creditors. Prior to the assignment he was married to appellant.

Gould and his wife both answered the bill. He set up, in his answer, payments on the notes described in the deed of trust, proceeds of sales of property received by the bank, and also rents received and not accounted for. The appellant, Caroline Gould, set up an agreement made with appellee, under which the bank agreed to release the Spring street property (the homestead) from the deed of trust, providing she would join with the assignee in sales of real estate made by him, releasing her inchoate right of dower in the property, and that she had executed deeds in compliance with the contract. The appellant also filed a cross-bill, in which she set up the parol agreement of the bank to release the homestead from the deed of trust, and prayed that the court enter a decree releasing that property from the deed of trust.

The cause was referred to a master to take evidence, and the master filed a report, and on the report, and evidence heard in open court, a decree of foreclosure was entered, as prayed for in the bill, and that decree was affirmed in the Appellate Court.

The cause was referred to the master on March 7, 1889. Nothing, however, was done under the reference until the 11th day of April, when the complainants produced Alfred Bosworth as a witness before the master. His evidence was taken, and the notes and trust deeds were introduced, and complainants

rested. The master then adjourned until May 1. Counsel for defendants not being able to appear on that day, May 27 was fixed upon to resume the taking of testimony. On May 24 counsel for defendants met counsel for complainants, and by agreement the time for taking evidence was changed to June 3. On June 3, however, no one appeared on behalf of the defendants. The master then closed his report, and on June 17 presented the report to the court. The complainants entered a motion for the approval of the report, and counsel for the defendants entered a cross-motion asking that the cause be referred back to the master to finish taking the evidence, and also to take evidence in support of the cross-bill. The court. allowed the motion to approve the report, and denied the cross-motion. The court, however, allowed appellant to introduce evidence, on the hearing, in support of her cross-bill. The ruling of the court on the motion is assigned for error. So far as appears from the record, ample time was given to take the evidence for defendants, and we think defendants failed entirely to show such diligence as ought to have been used to produce their evidence before the master, and we regard the ruling of the court on the motion as correct.

On June 25, when the cause was reached for a hearing, appellant and her husband entered a motion for a continuance, on account of the absence of her solicitor, H. A. Jones. The court overruled the motion, and this is the second error relied upon. The defendants were represented by two solicitors. One was present and the other absent, and so far as appears the solicitor who was present was entirely competent to present the cause for the defendants, and we do not think it was error to refuse a continuance of the cause. In any ordinary case one solicitor can try the cause as well as several, and if the absence of one of several solicitors employed in a cause was held to be ground for a continuance, it might in many cases be impossible to obtain trial without great and unnecessary delay. Had it appeared to the court that a trial could

not be had without injury to the defendants, and the absence of counsel was unavoidable, in the exercise of a sound discretion a postponement or continuance might have been ordered. But such was not the case.

It is next claimed, that the court erred in refusing relief on the cross-bill. This assignment of error presents a more serious question.

It appears from a stipulation entered into by the parties on the trial, that C. W. Gould made a general assignment for the benefit of his creditors in March, 1885, to W. J. Hunter; that previous to the commencement of this suit, Hunter obtained from the county court orders for the sale of the real estate assigned to him, and under such orders, from time to time, as he could find purchasers, he sold at private sale thirteen cheese factories, one farm, and two lots in Elgin, and has executed deeds therefor, as assignee, which sales were duly reported to and approved by the county court; that the aggregate amount realized from such sales was upwards of $25,000; that all such property was covered by mortgages held by the Elgin City Banking Company or the First National Bank of Elgin, which mortgages provided for a reasonable attorney's fee in case of foreclosure; that the net proceeds of such sales were paid over to said banks, which thereupon released such mortgages on the premises so sold; that Caroline C. Gould executed quitclaim deeds of all her rights and interest, as the wife of C. W. Gould, in property so sold, to the respective purchasers, and that she has received no consideration therefor; that the assignee sold the homestead property in Elgin at public sale, under the order of the county court, to A. T. Lewis, for two dollars; that he purchased for Mrs. Gould, and subsequently conveyed his interest in the same to her, and that this sale was made subject to the incumbrance of the Elgin City Banking Company on the same, which is sought to be foreclosed in this proceeding.

It is plain, from the evidence contained in the record, that an arrangement or contract was made between Caroline C. Gould and Bosworth, who acted for the banks, under which she joined with the assignee in the conveyance of the property which he sold from time to time, as assignee; but there is a conflict in the evidence as to the terms and conditions of the agreement. It appears from the evidence, that after the arrangement the assignee sold some of the property, and appellant was called upon to execute certain deeds presented to her, which she refused to do. Afterwards, Bosworth, the agent of the banks, in company with Botsford, who was a notary, called on appellant at her home, and a long interview was had, at which her husband was present. What was said and agreed upon at this meeting is the important question in the case. Mrs. Gould testified that the agent of the banks agreed that if she would sign the deeds, and thus save the expense and delay of foreclosing the mortgages, the banks would release the homestead from the mortgage. Gould, her husband, testified, in substance, that the arrangement was that his wife should execute the deeds, and they would save the homestead for her. Bosworth, who represented the banks, and made the arrangement with Mrs. Gould, denies that he agreed to release the homestead. He says, however, that he told her he thought there was a pretty good chance of the homestead being saved if the property was sold at private sale, but the chances would be lost if she refused to sign the deeds. Botsford, the notary, who was present at the conversation, is not able to state what the arrangement was. He says, in the conversation Bosworth seemed to be confident that the bank could get its money out of other property, and that the homestead would be saved for Mrs. Gould. No other persons were present at the time the alleged agreement was made, and the question presented is, whether the agreement was sufficiently proven to authorize a decree in favor of appellant.

5—136 Ill.

There is no ground for the position that the alleged agreement was not based upon a valid consideration. It is true, if the banks had foreclosed the mortgages on the property, they might have obtained title free and clear of any right or title in Mrs. Gould, as they were all executed before her marriage with Gould; but in order to realize the full value of the property it was necessary to make immediate sales, as the delay which would result from a foreclosure would result in the depreciation in value of much of the property, and hence result in great loss to the mortgagees. This the banks and all parties in interest foresaw. The banks therefore had a direct interest in making some arrangement under which the property could be sold and conveyed at once. This could only be done by having the assignee make sales, and in order to pass a marketable title it was necessary for Mrs. Gould to join in the deeds, releasing her inchoate right of dower. Nor can it be said that the Statute of Frauds, relied upon by complainants, is a bar to the relief sought by appellant. She has performed the contract, and is in possession of the property under that contract,—in other words, she has paid the purchase price for the release, and is in possession of the property under the agreement relied upon for a release of the property from the deed of trust. This is sufficient to take the case out of the operation of the Statute of Frauds.

The evidence of appellant, Mrs. Gould, is not only sustained by her husband, but the circumstances surrounding the transaction seem also to sustain her statement in reference to the contract. Before the meeting at which she claims the contract was made, she had refused to sign any deeds, claiming dower rights in the property. After the meeting was concluded she executed the deeds, which had been previously prepared, and continued to execute deeds from time to time, as often as sales were made. Hunter, the assignee, understanding that an arrangement of some kind had been made between the Goulds and the banks, advertised and sold the homestead at public

sale, and it was bid off for Mrs. Gould at a nominal sum, subject to the mortgages. After she had thus acquired title she paid out $179 to redeem the property from the tax sales, and then leased the premises to a tenant, and went into the country to live with her mother. It is unreasonable to believe she would pay money out of her own pocket to redeem the property from taxes, unless she had some arrangement under which she should hold the property. For what reason should appellant convey away her dower in property which brought the sum of $25,000, unless she was to receive something in return? No reason is perceived why she should make a gift to the banks, or convey away rights which she regarded as valuable, for nothing. These acts can only be explained on the hypothesis that she had a contract under which the homestead was to be released. As said before, the agent of the banks denies that a contract was made that the banks should release the homestead. Doubtless the witness is honest in his statement; but owing to the many transactions which he would necessarily have to supervise and arrange in managing and supervising the disposition of the large estate, in order that the incumbrances might all be paid and the banks he represented realize their entire indebtedness, the details of the agreement made with Mrs. Gould have escaped his memory. At all events, the evidence on this branch of the case seems to preponderate in favor of appellant, and the acts and conduct of the assignee, the appellant and the banks, in reference to the property, all seem to sustain the appellant.

We are aware of the general rule, on a bill for the specific performance of a contract for the sale of lands, brought by the vendee against the vendor, that the proof should be clear and satisfactory that the contract was made as charged, and that it is fair, reasonable and just, or equity will refuse relief. But that rule does not strictly apply to the facts of this case. This is not a bill to enforce the specific performance of a contract for the sale of lands. The appellant, here, by her cross-

bill, seeks merely the release of a mortgage, on the ground
that, as respects the premises involved, it was paid, and by
agreement it was, as to those premises, to be released and dis-
charged. In proving an agreement of this character, if the
evidence fairly preponderates in appellant's favor, that is all
that seems to be required. The deeds executed by appellant
were not made to the bank, but they were executed at its re-
quest, and it received the benefits resulting from the making
of the deeds, and it would be inequitable, after appellant has
parted with her rights in the property on the faith that the
homestead would be released, to allow the bank to disregard
the agreement, retain the moneys received resulting from the
agreement, and at the same time foreclose its mortgage on
the homestead.

The judgment of the Appellate Court and the decree of the
circuit court will be reversed, and the cause remanded, with
directions to enter a decree releasing the homestead property
from the mortgage or deed of trust.

*Judgment reversed.*